IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MOSHEN MOAF *et al.*,           )
                                )
          *Plaintiffs*,         )
                                )
     v.                         )   Case No. 1:24-cv-843 (PTG/IDD)
                                )
SEAN CASEY *et al.*,            )
                                )
          *Defendants*.         )
                                )

## MEMORANDUM ORDER

This matter is before the Court on Defendants Sean Casey ("Casey"), Dan Gordon ("Gordon"), Robert Gilmore ("Gilmore"), Brian Wade ("Wade"), Gregory Zedalis ("Zedalis"), Julio Ocasio ("Ocasio"), Juan Reyes ("Reyes"), Carols Canas ("Canas"), Morgan Garner ("Garner"), Stephen Mackey ("Mackey"), and Joseph Walker's ("Walker") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 49). Plaintiffs Moshen Moaf and Jacqueline A. Moaf (collectively, "Plaintiffs"), acting as personal representatives and co-administrators for the estate of their son, Anthony Ara Moaf ("Mr. Moaf"), filed this action against Defendants for their alleged actions related to Mr. Moaf's death while he was incarcerated at the Alexandria Adult Detention Center ("ADC"). Dkt. 46 ("Am. Compl.") ¶ 1. Plaintiffs bring a claim under 42 U.S.C. § 1983 against each Defendant alleging that they failed to protect Mr. Moaf in violation of his Fourteenth Amendment right. *Id.* ¶¶ 55–175. Plaintiffs also bring a wrongful death claim in violation of Virginia law against each Defendant.[1] *Id.* ¶¶ 176–297.

---

[1] Plaintiffs' Amended Complaint indicates they are bringing claims against the Alexandria Sheriff's Office. Dkt. 46 ("Am. Compl.") ¶¶ 169–175, 285–297. Plaintiffs, however, clarified that they are not attempting to bring claims against the Alexandria Sheriff's Office and any reference to the Office is a clerical mistake. Dkt. 53 at 4 n.1. Accordingly, the Court so finds.

1

The Court heard argument on Defendants' Motion to Dismiss the Amended Complaint (Dkt. 48) and took the motion under advisement. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## I. Factual Background

At this stage, the following facts from the Amended Complaint are accepted as true:[2]

On October 13, 2021, Anthony Moaf was arrested by the Fairfax County Police Department and charged with one count of distribution of controlled substances and two counts of possession with intent to distribute controlled substances. Am. Compl. ¶ 25. On April 18, 2022, the day before Mr. Moaf's preliminary hearing in the Fairfax County General District Court, Mr. Moaf attempted suicide by drug overdose. *Id.* ¶¶ 26–27. Mr. Moaf was resuscitated and hospitalized for approximately a week at INOVA Fairfax Hospital where he was under 24-hour surveillance. *Id.* ¶¶ 27–28. Police officers were aware that Mr. Moaf was under 24-hour surveillance. *Id.* ¶ 28. On May 16, 2022, Mr. Moaf appeared for his preliminary hearing in Fairfax County General District Court. *Id.* ¶ 30. The Commonwealth of Virginia *nolle prosequi'ed* the charges against Mr. Moaf. *Id.* As Mr. Moaf left the Fairfax County General District Court, federal agents from the Drug Enforcement Administration took Mr. Moaf into custody on federal charges. *Id.*

After his arrest, the Fairfax County Police Department searched Mr. Moaf's room in his parents' home. *Id.* ¶ 31. While the police conducted the search, Mr. Moaf's parents told the police officers that Mr. Moaf was suicidal, that he previously attempted to commit suicide, and that he needed to be on suicide watch. *Id.* Mr. Moaf's mother asked a police officer if she needed to call

---

[2] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

2

the ADC to inform them Mr. Moaf should be on suicide watch. *Id.* The police officer replied, "if you've told one of us you've told all of us." *Id.*

Upon his arrest on May 16, 2022, Mr. Moaf was booked into the ADC. *Id.* ¶ 32. During his initial medical screening with Defendant Garner, Mr. Moaf informed Defendant Garner that he used drugs, had overdosed before, and had mental health issues for which he took medication. *Id.* ¶ 33. Defendant Garner made notations on Mr. Moaf's intake sheet to this effect. *Id.* Defendant Mackey reviewed the intake sheet. *Id.* According to Alexandria Sheriff's Office protocol, Mr. Moaf required an immediate medical referral and notification based on the information he provided. *Id.* Mr. Moaf was not immediately referred to medical services, nor placed on suicide watch or any other kind of continuous monitoring. *Id.* On May 17, 2022, Mr. Moaf's mother brought Mr. Moaf's prescriptions for Trazadone and Zoloft to the ADC. *Id.* ¶ 35.

The same day, Mr. Moaf was arraigned in federal court and later returned to the ADC where he was housed in a booking cell ("IRC"). *Id.* ¶¶ 36–37. Upon his return to the ADC, Mr. Moaf was placed on a "Detox Protocol," scheduled to see a "PA" on May 21, 2022, and given a mental health referral. *Id.* ¶ 38.

On May 18, 2022, at some time before 8:13 a.m., Defendants Canas and Reyes knocked on Mr. Moaf's cell and asked if he wanted his vitals checked. *Id.* ¶ 41. Mr. Moaf did not respond, and Defendants Canas and Reyes decided to let him sleep. *Id.* At approximately 8:13 a.m., Defendants Canas and Reyes, and Nurse McCallum went to Mr. Moaf's cell and again asked if Mr. Moaf would like his vitals to be taken. *Id.* ¶ 42. When Mr. Moaf did not respond, Defendants Canas and Reyes, and Nurse McCallum opened the cell door. *Id.* When Mr. Moaf did not respond to further questions, they entered the cell and found Mr. Moaf unresponsive and blue. *Id.* Nurse McCallum and Defendants Canas and Reyes attempted CPR and other life saving measures. *Id.* ¶

3

43. On May 18, 2022, Mr. Moaf died of a drug overdose. *Id.* ¶ 48. Mr. Moaf ingested drugs while he was in custody. *Id.* ¶ 47.

Mr. Moaf was not placed on suicide watch despite requirements laid out in the ADC's policies and procedures. *Id.* ¶ 45. Mr. Moaf was not seen by a mental health care professional while at the ADC. *Id.* The Alexandria Sheriff's Office's Standard Operating Procedure states that "all inmate housing areas in the Alexandria Detention Center shall be inspected at random intervals not exceeding 30 minutes." *Id.* ¶ 44. The Standard Operating Procedure also dictates that security and observation checks will be conducted at intervals not exceeding fifteen minutes on detainees who have a mental disorder. *Id.* Pursuant to the Standard Operating Procedure, specialized post assignments, including IRC—where Mr. Moaf was held, should receive observation checks at intervals not to exceed fifteen minutes. *Id.* When conducting observation checks, sheriff's deputies are instructed to "check for signs of life" and "ensure the inmate is not in apparent physical distress." *Id.*

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted). When reviewing a 12(b)(6) motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and draw "all

reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

### III. Analysis

#### A. 42 U.S.C. § 1983 Failure to Protect Claims

Defendants argue that Plaintiffs failed to state a Section 1983 failure to protect claim because they did not allege (1) which conditions of Mr. Moaf's confinement posed a substantial risk of serious harm to Mr. Moaf; (2) that Defendants knew Mr. Moaf was suicidal; and (3) that Defendants acted with deliberate indifference. Dkt. 49 at 7–9.

*Sovereign Immunity for Official Capacity Defendants*

Defendants Casey, Gordon, Gilmore, Wade, and Zedalis are explicitly sued in their official capacities for money damages. Am. Compl. ¶¶ 9–13, 54–55.[3] As an initial matter, the Court must address the issue of sovereign immunity as it relates to Defendants sued in their official capacities for Section 1983 claims.

Under the Eleventh Amendment, "a federal court c[an] not entertain a suit brought by a citizen against his own State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "[A]n official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." *Hafer v. Melo*, 502 U.S. 21, 26 (1991). In Virginia, sheriffs are constitutional officers and are therefore immune from suits for money damages brought against them in their official capacities. *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D.

---

[3] Plaintiffs attempt to avoid the application of sovereign immunity by citing to *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014), but it does not support their position. In *Martin,* the Fourth Circuit found that although the plaintiff pled that state officers were sued in their individual capacities, the state was the real party in interest and therefore the defendants were actually sued in their official capacities. 772 F.3d at 196. Thus, *Martin* does not support the contention that the official capacity Defendants here, who are plainly sued in their official capacities, are not entitled to sovereign immunity.

5

Va. 1992). Likewise, sheriff's deputies have also been found to be "state officers" for the purpose of the Eleventh Amendment. *Vollette v. Watson*, 937 F. Supp. 2d 706, 714 (E.D. Va. 2013). Therefore, Defendants Casey, Gordon, Gilmore, Wade, and Zedalis are entitled to sovereign immunity under the Eleventh Amendment from Section 1983 claims for money damages because they were sued in their official capacities. Accordingly, Plaintiffs' Failure to Protect claims against Defendants Casey, Gordon, Gilmore, Wade, and Zedalis will be dismissed.

*Merits of Failure to Protect Claims for Individual Capacity Defendants*

The rights of a pre-trial detainee are governed by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "Prison officials have a duty to protect prisoners from self-destruction or self-injury." *Lee v. Downs*, 641 F.2d 1117, 1121 (4th Cir. 1981). To bring a failure to protect claim, "the plaintiff must establish (1) that [the detainee] was 'incarcerated under conditions posing a substantial risk of serious harm' and (2) that the defendant prison official had a 'sufficiently culpable state of mind,' one of 'deliberate indifference.'" *Butler v. N. Neck Reg'l Jail*, No. 1:18-cv-1525, 2020 WL 1326827, at *14 (E.D. Va. Mar. 20, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The standard for deliberate indifference to a plaintiff's medical needs is an objective one. *Short v. Hartman*, 87 F.4th 593, 610–11 (4th Cir. 2023) (finding that an objective test for deliberate indifference applies to all pretrial detainees' claims under the Fourteenth Amendment for claims of deliberate indifference to an excessive risk of harm). It is sufficient, but not necessary, for a plaintiff to show "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action would result in harm." *Id.* at 611. Instead, a plaintiff need only "show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The Fourth

Circuit has applied the "objectively unreasonable" deliberate indifference standard to a plaintiff's failure to protect claim. *Carmona v. Martin*, 2024 WL 4490695, at \*2 (4th Cir. Oct. 15, 2024); *see also Hammock v. Andoh*, 2024 WL 33694, at \*1 (4th Cir. Jan. 3, 2024) (remanding to the district court to apply the objective standard laid out in *Short*). "[T]he key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies." *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) (citing *Elliot v. Chesire Cnty., N.H.*, 940 F.2d 7, 10–11 (1st Cir. 1991)).

Here, Plaintiffs allege that Mr. Moaf was detained under conditions that posed a substantial risk of serious harm because: (1) he was not checked every fifteen minutes in violation of ADC policy and (2) he was not immediately referred to medical after informing Defendants Garner and Mackey that he used drugs, had previously overdosed, and had mental health challenges. Am. Compl. ¶¶ 33, 41–42. The Court will address each allegation in turn.

Plaintiffs do not plead facts that clearly show that Defendants Ocasio, Reyes, Canas, and Walker did not check on Mr. Moaf every fifteen minutes. Instead, the Amended Complaint asserts that Defendants Canas and Reyes checked on Mr. Moaf "sometime before 8:13 a.m." and then again "[l]ater that morning, at approximately 8:13 a.m." *Id.* ¶¶ 41–42. Plaintiffs argue that because Mr. Moaf was found "unresponsive and blue" at approximately 8:13 a.m., he must have not been checked on for at least six hours. Dkt. 53 at 8. The Court need not make the inference from the allegations in Plaintiffs' Amended Complaint that Mr. Moaf was not checked on for six hours. However, at the motion to dismiss stage, it is reasonable for the Court to infer from Plaintiffs' pleadings that Mr. Moaf was not checked for fifteen minutes prior to him being found at 8:13 a.m. in violation of ADC policy.

7

Nevertheless, "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013). Plaintiffs do not confront this language in *Jackson*, nor do Plaintiffs provide any case law to suggest that Mr. Moaf had a constitutional right to be checked on every fifteen minutes. Accordingly, failure to comply with ADC policy, which requires that individuals in booking be checked every fifteen minutes, cannot serve as the basis for a Section 1983 claim. Therefore, Defendants' Motion to Dismiss as it relates to the failure to protect claims against the defendants charged with checking on Mr. Moaf, namely Defendants Ocasio, Reyes, Canas, and Walker, will be granted.[4]

Plaintiffs also allege that Defendants Garner and Mackey failed to place Mr. Moaf on suicide watch despite his history of drug use and mental health problems. Taking as true Plaintiffs' allegations that Mr. Moaf informed Garner of his drug use, prior overdose, and mental health issues for which he took medication, the Court finds that Mr. Moaf was incarcerated under conditions that pose a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; Am. Compl. ¶ 33. Because Defendant Mackey reviewed the medical intake sheet completed by Defendant Garner, Defendant Mackey is also responsible for the conditions which placed Mr. Moaf at a substantial risk of serious harm. Accordingly, Plaintiffs have satisfied the first prong of a failure to protect claim as it relates to Defendants Garner and Mackey not placing Mr. Moaf on suicide watch.

---

[4] The Court need not reach the second prong of the failure to protect analysis as it relates to Defendants Ocasio, Reyes, Canas, and Walker. However, the Court notes that even if Plaintiffs had satisfied the first prong of the analysis as to these defendants, Plaintiffs did not allege any facts to show that Defendants Ocasio, Reyes, Canas, and Walker should have known that Mr. Moaf was suicidal, or was otherwise in danger. Therefore, Plaintiffs have not provided sufficient facts to support a finding that these defendants were deliberately indifferent to Mr. Moaf's situation.

8

Next, the Court addresses the second prong of a failure to protect claim—whether Defendants Garner and Mackey were deliberately indifferent based on a standard of objective unreasonableness. *See Farmer*, 511 U.S. at 834. Plaintiffs allege that Mr. Moaf informed Defendants Garner and Mackey that he (1) used Xanax, Zoloft, and marijuana; (2) had overdosed before; and (3) had mental health issues. Am. Compl. ¶ 33. As a result, Defendants placed Mr. Moaf on a "Detox Protocol," scheduled him to see a physician assistant five days after he was first brought to the ADC, and given a mental health referral. *Id.* ¶ 38. Defendants contend that it is reasonable for Defendants Garner and Defendants Mackey to have assumed that a previous drug overdose was not a suicide attempt and therefore it was reasonable to not place Mr. Moaf on suicide watch. Dkt. 49 at 10. Plaintiffs argue that Defendants "Garner and Mackey, or an objectively reasonable person in Garner's and Mackey's positions, would have known that [Mr. Moaf] was suicidal" based on the information he shared. Dkt. 53 at 9.

Plaintiffs pled that Defendants Garner and Mackey knew or should have known that Mr. Moaf was suicidal. Dkt. 53 at 9; *see Gordon*, 971 F.2d at 1094 ("[T]he key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies.") (citation omitted). Making all inferences in favor of Plaintiffs, as is required at this stage, it is reasonable to assume that with the combination of mental health problems and drug use, a previous overdose was a suicide attempt. Accordingly, the Court finds that not placing an individual who had previously attempted suicide over their legal troubles on suicide watch is objectively unreasonable. Therefore, at this stage, Plaintiffs have pled sufficient information to plausibly allege that Defendants Garner and Mackey were deliberately indifferent to the substantial risk of harm that arose from not placing Mr. Moaf on continuous

9

observation. Defendants' Motion to Dismiss as it relates to the failure to protect claims against Defendants Garner and Mackey for failing to place Mr. Moaf on suicide watch will be denied.

### B. Wrongful Death in Violation of Virginia Law Claims

Plaintiffs bring wrongful death claims in violation of Virginia law against all Defendants. Am. Compl. ¶¶ 176–297. To bring a claim under Virginia's wrongful death statute, Plaintiffs must show that Mr. Moaf's death was caused by "the wrongful act, neglect, or default" of Defendants. Va. Code § 8.01–50(A).

Defendants argue that Plaintiffs have not shown that Mr. Moaf was of unsound mind when he died by suicide and therefore, Plaintiffs cannot recover under the wrongful death statute. Dkt. 49 at 19–20. An individual who engages in an illegal act cannot recover against another participant for the consequences of that illegal act. *Brown v. Harris*, 240 F.3d 383, 386 (4th Cir. 2001). In Virginia, suicide is a common law crime. *Id.* To commit suicide an individual must "(1) take his own life; (2) be of 'years of discretion'; and (3) be of 'sound mind.'" *Id.* (quoting *Wackwitz v. Roy*, 418 S.E.2d 861, 864–65 (Va. 1992)). "A person is of sound mind if competent and sane." *Id.* However, "Virgina courts have permitted plaintiffs to bring wrongful death actions stemming from a suicide when the decedent did not have a sound mind." *Basilica v. Harris*, 658 F. Supp. 3d 285, 292 (E.D. Va. 2023). In Virginia, "a person is presumed sane unless evidence is produced to show otherwise." *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992).

Plaintiffs allege that Mr. Moaf "was of unsound mind." Am. Compl. ¶¶ 48, 51. Defendants argue this allegation is insufficient to show that Mr. Moaf was of unsound mind when he committed suicide. Dkt. 49 at 20. Defendants aver that because Mr. Moaf was taking prescription medication for his mental health, the logical inference would be that the medication was working. *Id.* However, the Court must take Plaintiffs' allegations as true and make all reasonable inferences

10

in favor of the non-moving party. Plaintiffs' allegation that Mr. Moaf had previously attempted suicide because of his legal troubles supports a determination that Mr. Moaf was of unsound mind while incarcerated at the ADC. Am. Compl. ¶ 27.

Having determined that for the purposes of the instant Motion to Dismiss, Mr. Moaf was of unsound mind, the Court turns to Plaintiffs' allegations of negligence, gross negligence, and willful and wanton negligence as Defendants' underlying wrongful acts or neglects that can serve as the basis for a wrongful death claim.

*Wrongful Death Predicated on Simple Negligence*

To bring a negligence claim (1) the defendant must have owed plaintiff a legal duty; (2) there must be a breach of that duty; and (3) plaintiff's injury must be proximately caused by that breach. *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999). "Negligence must be in relation to some person." *Quisenberry v. Huntington Ingalls Inc.*, 818 S.E.2d 805, 810 (Va. 2018) (citation omitted). However, negligence does not "require actual interaction between the parties." *Id.* at 811. A "sufficient relation to place plaintiff within reach of defendant's conduct" is enough. *Id.*

Defendants argue that Plaintiffs did not make specific allegations as it relates to Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, and Walker. Dkt. 49 at 21. Defendants contend that Plaintiffs only pled specific actions of Defendants Reyes, Canas, Garner, and Mackey. *Id.* Plaintiffs pled that Defendants Casey, Gordon, and Gilmore were responsible for supervision of the ADC. Am. Compl. ¶¶ 9, 10, 11. Plaintiffs also pled that Defendants Gilmore, Wade, Zedalis, Ocasio, and Walker were on duty when Mr. Moaf died. *Id.* ¶¶ 11, 14, 17, 178, 192. These allegations create a "sufficient relation to place plaintiff within reach of defendant's conduct" at the motion to dismiss stage. More information about the actions of individual defendants named

in Plaintiffs' Amended Complaint will likely come out in discovery. *See Meade v. Mynes*, 2020 WL 3697974, at *4 (S.D. W.Va. July 6, 2020) (finding that discovery was needed to identify the roles of specific officers during the occurrence described in the pleading).

The Court must first address the issue of sovereign immunity as it relates to Plaintiffs' wrongful death claim predicated on simple negligence. Under Virginia law, employees of "an immune government entity, such as a sheriff's office, may invoke the Commonwealth's sovereign immunity with respect to claims of simple negligence so long as the challenged conduct consisted of 'acts of judgment and discretion which are necessary to the performance of [essential] governmental function[s].'" *Riddick v. Watson*, 503 F. Supp. 3d 399, 425–26 (E.D. Va. 2020) (quoting *Heider v. Clemons*, 400 S.E.2d 190, 191 (Va. 1991)). "If, however, the alleged negligence stems from the performance of 'purely ministerial acts,' the immunity defense is unavailable." *Id.* at 426. The Virginia Supreme Court provides four factors for courts to look to in determining whether the challenged conduct is an essential government function: "(1) the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control and direction the state exercises over the employee, and (4) whether the act performed involves the use of judgment and discretion." *Id.* (quoting *Friday-Spivey v. Collier*, 601 S.E.2d 591, 593 n.4 (Va. 2004)).

Jail employes are engaged in the "government function of housing inmates and properly operating jails." *Dallas v. Craft*, No. 3:21-cv-349 (DJN), 2022 WL 2079312, at *28 (E.D. Va. June 9, 2022). Virginia has a strong interest in, and exercises a great degree of control over, this function. *Id.* The Eastern District of Virginia has found that officers assessing the physical and mental health of inmates, and making housing decisions and assignments based on determinations from these assessments, are engaged in discretionary actions. *Dowdy v. Pamunkey Reg'l Jail*

*Auth.*, No. 3:14-cv-003 (JAG), 2014 WL 2002227, at *4 (E.D. Va. May 15, 2014); *see also Dallas*, 2022 WL 2079312, at *28 (finding that Virginia Department of Corrections employees making determinations about when to take an inmate to medical and transport him to an emergency room were engaged in a discretionary function). In *Dowdy*, this District found that, at the motion to dismiss stage, a jail official was entitled to sovereign immunity for negligence claims brought in relation to their decision to place an inmate in a standard cell after deputies told the acting intake officer that the inmate "wanted to kill himself." 2014 WL 2002227, at *1, 4. On the other hand, failure to provide an inmate with basic medical care while she was in obvious distress is not a discretionary function that entitles defendants to sovereign immunity. *Riddick*, 503 F. Supp. 3d at 430.[5]

Here, Plaintiffs allege that Defendants Garner and Mackey were negligent when they failed to put Mr. Moaf on continuous observation. Am. Compl. ¶¶ 260, 266, 274, 280. These facts involve discretionary judgments and are akin to *Dowdy* where the defendants were found to have sovereign immunity. 2014 WL 2002227, at *4. Therefore, the Court finds that Defendants Garner and Mackey are entitled to sovereign immunity for the wrongful death claim based on simple negligence. Accordingly, any wrongful death claim predicated on simple negligence against Defendants Garner and Mackey will be dismissed.

As to Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes, and Canas, Plaintiffs allege that they were negligent in failing to check on, or ensure that others checked on, Mr. Moaf every fifteen minutes in light of their knowledge of Mr. Moaf's mental

---

[5] Plaintiffs contend that like the plaintiff in *Riddick v. Watson*, Mr. Moaf did not receive any medical care and therefore, Defendants should not be entitled to sovereign immunity. Dkt. 53 at 21. However, this argument is contradicted by Plaintiffs' allegations that Mr. Moaf was placed on a Detox Protocol and referred to see a medical provider. Am. Compl. ¶ 38.

health problems and prior history of drug use. Am. Compl. ¶¶ 46, 182, 196, 209, 223, 237, 250, 291. These allegations are related to how Defendants "supervise[d] and manage[d] inmates" which "falls cleanly within the governmental function of housing inmates and properly operating jails." *Dallas*, 2022 WL 2079312, at *28. The remaining question is whether Defendants' actions involved the exercise of "judgment and discretion." *Riddick*, 503 F. Supp. 3d at 426.

Plaintiffs attempt to analogize this case to *Riddick v. Watson*, where the employees' failure to provide the inmate any care was not viewed as a discretionary function. In particular, Plaintiffs argue that because Mr. Moaf was found blue and unresponsive, Defendants failed to provide him with medical care when he was in obvious distress. Dkt. 53 at 20–21. This case is different from *Riddick* because there the decedent "writhed and agonized in pain in her cell[,]" was "seen waiving her harms through the cell bars to secure medical assistance, but none came[,]" and placed "her hands near the bottom of the bars [to] indicate that 'she was on the floor and unable to stand.'" 503 F. Supp. 3d at 408 (citations to the record omitted). Here, Plaintiffs have not alleged facts indicating Mr. Moaf was in obvious distress or that such obvious distress was ignored. Accordingly, Defendants' Motion to Dismiss will be granted as to Plaintiffs' wrongful death claim based on Defendants' alleged failure to provide medical care.

Plaintiffs also argue that the act of checking on Mr. Moaf every fifteen minutes, as required by ADC policy, was a ministerial act that did not involve discretion. Dkt. 53 at 21 ("Defendants did not check on Anthony as they should have."). Defendants do not confront this argument in their Motion to Dismiss or Reply. At this stage, the Court views this argument as conceded. *See Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, No. 3:12-cv-771 (JAG), 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) (finding that where a party does not respond to an argument in its opposition, the argument is "effectively conced[ed]"). Accordingly, at this stage, Defendants

14

Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes, and Canas are not entitled to sovereign immunity for simple negligence claims predicated on their alleged failure to check Mr. Moaf every fifteen minutes.

Next, the Court must turn to the merits of the wrongful death claim predicated on simple negligence for failure to adequately check on Mr. Moaf. First, Defendants owed Mr. Moaf a duty of protection while he was detained in the ADC. *See Lee*, 641 F.2d at 1121. Second, under Virginia law, the standard in a negligence case is that of a reasonable person and is generally determined by a jury. *Talley*, 179 F.3d at 158. Although Plaintiffs have failed to allege facts sufficient to show that Defendants acted objectively *unreasonably* to maintain their Section 1983 claim, Plaintiffs have alleged sufficient facts to maintain their negligence claim at this motion to dismiss stage. It would be for the jury to determine whether the other Defendants acted reasonably when checking on or supervising those who checked on Mr. Moaf at intervals of, allegedly, greater than fifteen minutes. Am. Compl. ¶ 46. Third, and finally, Plaintiffs have alleged that Mr. Moaf's death was caused by Defendants' breach of the duty owed to Mr. Moaf. *Id.* ¶ 53. Accordingly, Plaintiffs have adequately stated a claim for wrongful death predicated on simple negligence as it relates to these Defendants' failure to check on, or ensure others checked on, Mr. Moaf every fifteen minutes.

*Wrongful Death Predicated on Gross Negligence*

Plaintiffs' also bring a wrongful death claim based on gross negligence against all Defendants. To show gross negligence, a plaintiff must demonstrate "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Basilica*, 658 F. Supp. 3d at 292–93 (quoting *Commonwealth v. Giddens*, 816 S.E.2d 290, 294 (Va. 2018)). If a defendant exercised some

degree of care, a claim for gross negligence will fail. *Id.* at 293. Even ineffectual or inadequate efforts may meet the required degree of care, provided the efforts "were not so insufficient as to constitute the indifference and utter disregard of prudence that would amount to a complete neglect for [an individual's] safety." *Id.* at 293 (quoting *Elliott v. Carter*, 791 S.E.2d 730, 733 (Va. 2016)).

Here, Defendants Garner and Mackey placed Mr. Moaf on a Detox Protocol after learning he had previously overdosed and used drugs. Am. Compl. ¶ 38. Garner and Mackey also gave Mr. Moaf a mental health referral and scheduled him to see a PA. *Id.* Therefore, Plaintiffs' allegations do not plausibly allege the actions of all Defendants constituted "complete neglect of the safety" of Mr. Moaf. *See Basilica*, 658 F. Supp. 3d at 292–93.

As it relates to Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes and Canas, who are alleged to have not checked on Mr. Moaf frequently enough, Plaintiffs have also not pled sufficient facts to establish gross negligence. Plaintiffs pled that Reyes and Canas checked on Mr. Moaf "sometime before 8:13 a.m." and "at approximately 8:13 a.m." Am. Compl. ¶¶ 41–42. Plaintiffs also pled that Reyes and Canas attempted life saving measures when they found that Mr. Moaf was unresponsive. *Id.* ¶ 43. Because ADC employees checked on Mr. Moaf repeatedly, albeit at intervals allegedly longer than fifteen minutes, and attempted to provide lifesaving care, Defendants provided Mr. Moaf with a degree of care that precludes a gross negligence claim. Accordingly, Defendants' Motion to Dismiss as it relates to Plaintiffs' wrongful death claim predicated on gross negligence will be granted.

*Wrongful Death Predicated on Willful & Wanton Negligence*

Finally, the Court addresses Defendants' Motion to Dismiss Plaintiffs' wrongful death claims based on willful and wanton negligence. "Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from

the act done or omitted." *See Basilica*, 658 F. Supp. 3d at 293 (quoting *Curtis v. Highfill*, 840 S.E.2d 321, 324 (Va. 2020)). "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* (citation omitted).

Because all Defendants exercised some degree of care that is sufficient to preclude a gross negligence claim, Plaintiffs' claims for wrongful death predicated on willful and wanton negligence must also fail. Further, Plaintiffs have not pled that Defendants had an "actual or constructive consciousness" that Mr. Moaf would attempt to take his own life if he was not placed on suicide watch or not checked on every fifteen minutes. Therefore, Plaintiffs have not pled sufficient facts to assert willful and wanton negligence to maintain their wrongful death claim. Accordingly, Defendants' Motion to Dismiss will be granted as it relates to Plaintiffs' wrongful death claims based on willful and wanton negligence.

## IV. Conclusion

For these reasons, the Court grants Defendants' Motion to Dismiss as it relates to (1) the Failure to Protect Claims brought against Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes, and Canas; (2) any Wrongful Death claim against Defendants Garner and Mackey; (3) a Wrongful Death claim based on simple negligence against Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes and Canas for alleged failure to provide Mr. Moaf with medical care; (4) the Wrongful Death claims based on gross negligence and willful and wanton negligence against Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes, and Canas. The Court denies Defendants' Motion to Dismiss as it relates to (1) the Failure to Protect claims brought against Defendants Garner and Mackey and (2) the Wrongful

Death claims based on simple negligence for Defendants Casey, Gordon, Gilmore, Wade, Zedalis, Ocasio, Walker, Reyes, and Canas for alleged failure to check on Mr. Moaf every fifteen minutes.

Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**; it is further

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED** as it relates to Counts I, II, III, IV, V, VI, XIV, XXI, XXII; it is further

**ORDERED** that Defendants' Motion to Dismiss is **DENIED** as it relates to Counts VII and VIII; it is further

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part** as to Counts XV, XVI, XVII, XVIII, XIX, XX, XXIII. Defendants' Motion to Dismiss as to these Counts is **GRANTED** as it relates to a claim based on simple negligence for Defendants' alleged failure to provide Mr. Moaf with medical care. Defendants' Motion to Dismiss as to these Counts is **DENIED** as it relates to a claim based on simple negligence for Defendants' alleged failure to check on Mr. Moaf every fifteen minutes. Defendants' Motion to Dismiss as to these Counts are **GRANTED** as it relates to a claim based on gross negligence and willful and wanton negligence; and it is further

**ORDERED** that Defendants file an Answer as to the remaining Counts within twenty-one (21) days of the date of this Order.

Entered this 18th day of September, 2025
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge